The case for this afternoon is 2015-10723 Marshall Myers v. Regional Adjustment Bureau. You may proceed. Yes, you may proceed with your argument. May it please the Court. Counsel, my name is Steve Knight, and I'm here on behalf of the appellant Marshall Myers. We've raised a number of issues in our brief, but I'd like to focus on the paramount issue here, and that is whether Mr. Myers, whether the record reflects that Mr. Myers, whether the record reflects convincing evidence that Mr. Myers engaged in bad faith conduct. And I submit that there's no evidence in this record that Mr. Myers engaged in misconduct and certainly not clear and convincing evidence of bad faith. Let me ask you this. If we ended up agreeing that there was a concern with the use of inherent power here, your client's opponent had also filed under 1927 and some other rules that would allow for recovery of attorney fees. If we went your way on inherent power, would we need to remand for consideration of other venues, avenues of relief of attorney fees? I realize I wouldn't allow for the suspension, but for avenues of relief for attorney fees. I don't believe that the RAB has argued for remand on reconsideration of 1927 or 37 or anything like that. RAB advocated very seriously that they wanted these attorneys disbarred, calling for my client's disbarment. Okay, but that's not my question. My question is they originally moved for this relief. The judge said, well, that doesn't get me where I feel like I need to go, so I'm going to call upon inherent power to discipline these lawyers. I'm saying, well, if we end up agreeing with you and disagreeing with the judge on that piece, should we nonetheless send it back to consider where we began, which was the 1927, et cetera? I think the answer is if you disagree that my client should have been disbarred and have the award of fees against him, that what the appropriate relief is to reverse the order as it pertains to Myers. I don't know that there's anything else to remand. The court did not grant their motion on 1927 or Rule 37. But that's because the court went off on inherent power. I mean, you have argued very strongly all of the difficult-to-meet standards of this inherent power, the clear and convincing and the bad faith and all of that. And that's been a big part of your argument, in addition to an argument that you didn't do anything wrong at all, which I get. So if you persuade us on that, it seems to me that then there's still this question of whether attorney's fees as a sanction is available under some other rule that the district court put aside in her mind, the judge in her mind, because she was going on this inherent power package. Your Honor, I guess I hadn't given that a lot of consideration because when RAB is arguing for the continuation of this theory that Mr. Myers lied, even though he didn't lie, and so forth, they don't argue any alternative that if you find that he didn't lie, at least remand for reconsideration so that we can get our attorney's fees from the firm. So I would say they waive that. I'm sorry. What is the status of the attorney's fees award in the related defendant? So what is the status of that? The opinion sent that back. Do you know what that is, what the status of that is? I can't tell the court that I know. I can only surmise that since RAB Bill's appellate counsel had asked for an extension of time to perhaps… Nothing has happened because we're still under the petitions for rehearing timetable. That's what I would assume, but I'm not signed up on the electronic notifications for the underlying matter because I haven't appeared in that case. So do we need to decide if we were to agree that – I'm assuming the opposing counsel may argue that you could get – they could get fees under 1927. We would need to decide whether or not there was not just clear and convincing evidence. We would need to decide whether you're correct in your argument that they didn't do anything wrong at all. They didn't get the Myers? Assuming it's waived, then we don't have to do that. But if we didn't find it waived, then we should answer the question of whether he did anything wrong at all that could be sanctioned perhaps. That's absolutely right, and I have to urge before the court that what – the reason I'm here and the reason we're pursuing this appeal is can you imagine a 15-year lawyer who has worked his entire life to build a firm, to build a reputation, to build a business, having 50 people dependent on you who are employees at various times, and now you have an order. Even though Mr. Myers had never been sanctioned, his honesty, his integrity hasn't been questioned before, and now you have this 83-page order that's calling him a liar. You know, what's interesting to me is you all want it both ways. You want to be able to cite his past record to kind of support the idea that this is a shocking sanction against him, but you don't want the opposing counsel to be able to bring up other areas where his firm was sanctioned or where things were called into question about the way the firm runs itself. And I don't think you can have it both ways. If you want to rest on I am a man of integrity, then I think you're stuck with any shots that come your way on that would suggest otherwise. Judge, but I think it's the other way around. It's because the district court allowed Ms. Malone and Rab to expand the scope of the sanction hearings to now include this massive campaign of let's destroy the firm's reputation, let's destroy the man behind the firm's reputation, that he has to come forward and tell the court, everything I told you on the first day of the hearing, everything I said was true. And if you remember from this record, and I urge this court to apply the careful eye that it described in the Radbill appeal, you go back to the first day of this hearing. When Mr. Myers explained why he's there and what he's doing there, the court immediately began asking questions about, have you ever been the subject of discipline? Right. It seems that it was far afield from the matter before the court, and positive software would say that you shouldn't be going into extraneous matters. The court is not a roving website checker for the state bar, for example. And also, the opposing counsel can't be the one bringing evidence to the court. I was going to ask the opposing counsel, what evidence did the court find on its own on these extraneous points that was not brought to it by opposing counsel? Well, I'd like to know that too, Judge. Can we tell that from this record? Because I've read the transcript extensively and looked at the affidavits. You can't tell that from the record, and here's what's troubling me, is in the Radbill opinion, the court remarked that it's sort of a disturbing sense of partisanship in reference to the letter that was brought to the court's attention. I agree with that, but the court, based on opposing counsel's responses to the court, this court, dispelled any notion that this organization has anything to do with the proceedings below. Fine. If that's true, I can't figure out a couple of things. I can't figure out, number one, why is it that in their brief, they're continuing to argue that Mr. Myers lied about Radbill's accomplishments in the capital records case, when I think in my brief, in the record, conclusively shows that that is not a lie. That prior firm was involved in that case in 2009 and remained in it, yet the argument is still that they're involved. Okay, when you're a barely licensed first-year associate, I mean, to say you're the lawyer on the case is, I mean, I think that was a bit of a stretch. But I want to say something, because you're bringing it up, and it isn't you personally, but I'm very concerned about the lawyers in this case in general, because if we, whether or not we reverse the suspension, they have to practice together at some point, and certainly in state court, where the suspension wouldn't matter. And it seems to me that your client and the law firm, Ms. Malone's firm, are just crosswise on everything. I mean, you just want to call each other names. Why is she still doing this? Why is he still doing this? And it just seems like it's just a series of name-calling instead of getting to a bottom line. And, you know, we said in the prior opinion, two wrongs don't make a right. So if Ms. Malone has conducted herself inappropriately, that doesn't make your client's conduct appropriate. I'm not suggesting that. What I'm suggesting to the court is that Mr. Myers has had his reputation ruined through this order, and he's had his reputation ruined by – and I know Your Honor kind of said, you know, maybe the Capitol records thing, not a great example. It is a great example, and the reason is, when that – you go back and you look at the pivotal moments in this sanctions hearing. After that was brought out, the lies on the resume and the fact that the managing partner is sponsoring this lie, telling the world that this lawyer has experience that he doesn't have and that he couldn't have had it, they just made it up because the case ended two years before he was a lawyer. The follow-up exchange, and what's critical here, is what impression did that leave Judge Boyle? Judge Boyle is relying on the attorneys to present accurate information, and Judge Boyle turned to Mr. Myers at that critical juncture and said, in light of the fact that this point brought up here shows that he lied about this, do you stand by this guy, and how could you stand by him? Don't you see this is ultimately going to be your own downfall? This is – you know, the involvement – I just think that argument isn't really well placed here, but let me ask you a different question because I want to get to this. What – if we were to conclude that the evidence shows, and I'm not saying we will, but if we were, that Mr. Myers didn't properly supervise Mr. Radfield, what does that do to the analysis of the sanctions? That's a little different from holding him vicariously liable. It's saying he has a duty as manager's partner to not have associates running amok, lying to courts, and so on. What does this failure to supervise add to the mix, if anything? Your Honor, I have to bring some things to your attention on this because if that's where the court is going on the failure to supervise, that is most assuredly not supported by this record. And let me tell you, in the original motion for sanctions that was filed by Malone after the White case, the allegation against the firm – you have to keep this in mind. The firm was accused of essentially three things. Number one, your fee agreement is unethical. Well, nobody's found that anywhere. Number two is the fact that Selman offers, whether they're communicated. And then number three, the third allegation in the original motion for sanctions is there are many examples of partners reviewing the case and further supervised lead counsel, Noah Radfield, throughout the entire litigation. That they did supervise. That they did. But Judge Haines' question has to do with the fact that he only billed two and a half hours on the file and didn't know what was going on. Does the record support that, that he didn't know what was going on? And does it matter that he didn't know what was going on because it's not his assigned case? It is accurate that he billed 2.4 hours, and if you look at those entries, he's making sure things are calendared, things are docketed. He's looking at the case as a managing partner with a bird's eye view. And the allegation is that there are too many partners and too many people supervising Noah Radfield. That's what started all this in our motion for sanctions. Well, that could be wrong, though. So Judge Haines is asking a different question. Does the record show that he was not supervised? The record does not show that... And did the court make any finding that he was not supervised? I don't think the court expressly made that finding, but even if it had said that somewhere in the 83 pages... And it's definitely in the 83 pages. And it might be. I don't want to say otherwise. But is your client the one who that's on, or is that on his brother or someone else at the firm who should be supervising him? That's exactly right. I mean, even opposing counsel refers to Aaron Radville as the supervising attorney. During the sanctions hearing, Mr. Radville was asked questions about supervision, and he was asked whether he ran things by any sort of a supervisor. His testimony under oath was, of course I did. I talked to my brother, Aaron Radville, about how to try this case. And what's the difference in experience of the two? I mean, Aaron is the more seasoned attorney. How long has he been practicing relative to Noah? And I use their first names only because their last names are the same. I'd have to look at that. I know that Aaron Radville's resume is part of Rob's exhibit. Wasn't he a partner at the firm? He was a partner at the firm. So Noah's an associate, Aaron's a partner, and so a partner was supervising him. Yes. And whether he did a good job of that or not, but that doesn't mean that Myers is also supposed to supervise him too or something. That's exactly right. And in describing... So is it your position that Myers was not responsible for supervising Noah Radville on this case because Aaron Radville was responsible for that? Yes. And as a matter of fact, Mr. Myers is not a Texas lawyer, and at the time the White case was tried, he's not admitted to any district court in the state of Texas. So he couldn't have gone in side-by-side. I mean, maybe he got pro hoc or something, but he's not supposed to be supervising him on this case. No, other than from a managing partner who has over a firm that has cases in many, many states. He's going to be copied on various things, and he's going to be making sure that the cases are moving forward. But as far as the nitty-gritty details of the case, he's relying on other partners in the firm who are on the ground to move the case forward. And how many people in this firm? Well, the testimony was I think there were seven partners at the time, but they had also council folks in other states to help them along with cases in which they brought in. And how many associates? Aaron was – or Noah Radville was an associate. I don't recall if there were two or three others. I know that that was addressed within the first 10 or 12 pages of day one. I have a question for you. Have you read the record in the trial before it was born? Yes, sir. You've read it? Yes, sir. What do you think about it? I thought that the – I thought a few things in terms of the record, not only of the trial, but of the record leading up to the trial. And I guess my observation would be leading up to the trial, Noah Radville filed various documents, secured a summary judgment victory, took depositions, defended a very aggressive deposition taken by the other side, secured legal rulings from the court such that there are no signs of trouble. Well, what – you have no other opinion about what Mr. Radville did, how he responded to the judge? I think that – I do, Judge. I do, and I think that that came out in the record. I think clearly that the exchange about was the $40,000 disclosed. I can't say Mr. Radville lied about that. I don't know the man. I'm not talking about lying. I'm talking about whatever you want to say, whatever you want to call. What kind of a lawyer do you think Mr. Radville was being, and do you have any criticism of him? I don't know that I've thought about it to that great extent. Oh, you would join Mr. Myers, who the first thing he says when he gets to this action hearing is that I've read the complete record, and there's no misconduct in it at all except not showing up in the morning for the verdict. Your Honor, I don't think that that's what Mr. Myers said. In fact, if you look at what he said on day one, he said that there are things, plural, that Mr. Radville did wrong. In his next sentence, he clarified, however, that in his view, he doesn't think it was done in bad faith because he doesn't agree that Mr. Radville is a liar. That was his point that he was trying to convey to the Court, and he said— Do you have anything to say personally? I'm asking you, Mr. Knight, what is your opinion of what transpired in that original trial? Don't tell me about whether somebody lied or not. Don't measure veracity, but how do you react when you read this, what went on in the Court? Obviously, there were mistakes that were made, and the case went south. Did Mr. Radville make any mistakes? Did he make any statements that he shouldn't have made? Do I think so? Yes. Yes. Did he make any mistakes? Did he make an attempt to explain the $40,000 and the $1,500 and why that wasn't disclosed in the pretrial? Did he explain that as you would if you were before the Court? No, I don't believe I would have explained it the same way. Why not?  What would you have done? Well, I think that the position that came out through Mr. Radville's counsel, that stepped in to represent Mr. Radville at the sanctions hearing, was that there was some sort of a miscommunication about the $40,000 and that the more appropriate answer would have been, in direct response to the Court's question, we're not intending to seek this recovery. It wasn't disclosed for that reason, and that's the end of the story. It wasn't disclosed. Now, you don't represent Mr. Radville in this proceeding, right? I do not represent Mr. Radville. You only represent Mr. Myers, right? Correct. And it's about Mr. Myers' conduct in the hearing that's an issue. That's right. But part of the problem with Myers was his, in the judge's terms, failure to acknowledge the problems with Radville, and that's kind of, I think, where Judge Riebley's going with this question. But, as you pointed out, he did acknowledge that he had problems, and he was there to represent him. We don't have to debate the record. Well, I think we should fairly articulate what it is. But I do have a couple more questions then. What in the record showed that Mr. Myers was given notice, either via show cause or something like that, that he could be barred from practicing law based upon his recollection of Judge Hughes' proceedings? None. What in the record gave him notice that he could be barred or suspended from the practice of law because of a website representation of the associates? None. What in the record gives Mr. Myers notice that he could be suspended from practicing law based upon what he said when he was representing Mr. Radville in the first day of the hearing? None. Do you believe that due process requires these things to be, he should have been given written notice that he could be suspended and that he was being personally brought in? It goes beyond that. The case law would cite it says he's entitled to written notice not only of that, but also of the grounds. What case said that? And everybody's going to get two more minutes. Well, I'm not through. Okay. The Daley versus Vought aircraft case. Daley versus who? Daley versus V-O-U-G-H-T. The quote is, before judgment is barring an attorney is rendered, he should have notice of the grounds of the complaint. Okay. Assuming that the Crow case says that if the suspension must be vacated if there's no clear and convincing evidence, and that also that applies to the monetary sanctions in the Crow case, assuming that we were instead to go back to the attorney's fees issue under the statutory attorney's fees rather than inherent power, would those have to be allocated or apportioned? Or could he be liable for the entire amount of the attorney's fees throughout the entire trial of which he was not a part of? Or would he only be for the second day or the third day of the hearing? What part of the attorney's fees or would the court be entitled to impose all the attorney's fees jointly or separately on him? Judge, to answer that question, I think we have to first go back to what is the evidence of Mr. Myers engaging in any misconduct for clear and convincing evidence of bad faith conduct. Where's the evidence of Mr. Myers doing something wrong here? And that's what I began with. Their first argument on appeal deals with misrepresenting things about never did he personally have knowledge or information that Mr. White was going to testify about the $40,000 in damages. The evidence that they cite as showing conclusively in their opinion that Mr. Myers lied about that are these time entries. The time entries say nothing about Mr. Myers having evidence, and it's contrary to what you had asked me before, that his time entries, 2.4 hours, don't show the specific level of involvement to have knowledge about the White memorandum. Each and every alleged lie that opposing counsel, Rav, points out in continuing to try to get sanctions against Mr. Myers, it does not check out. I've looked at this record, as I know the court has, in great detail at this sanctions hearing, and I submit that there are some fundamental problems with what I view was presented to Judge Boyle and led Judge Boyle into the findings and impression of Mr. Myers that's not reality. A key example of this, again, I used the capital records one earlier. Another key example that's critical is after the first day of the hearing, when the court was asking him about the history of the firm and so forth, and then you get to the second day of the hearing where, based on Rav's position about expanding the scope of the hearing to involve Myers, Mr. Myers is shot. How am I getting brought into this? I voluntarily appeared in court to defend the firm and to try to assist here. I even got admitted to the Northern District to assist here, and now I'm being looked at as a liar. Mr. Myers filed an affidavit, this very detailed affidavit, in an attempt to show the court that everything he said day one is true. Here's what's so important about this affidavit, and I think it's indicative of how Judge Boyle perhaps was led astray here, and that is, during the third day of the hearing, in Mr. Myers' affidavit, in the footnote on page two, he describes that the court on day one inquired as to ethics complaints against the firm, and he goes on to say later on, I can absolutely positively tell the court that no attorney at Weisberg Myers was ever disciplined in the context of an ethics complaint. Day three of the sanctions hearing comes up, and they're going through the three sanctions orders in the history of the firm with Mr. Myers, and Judge Boyle says, I've heard something about an affidavit, what is that? And the opposing counsel pulls out the affidavit and says, Judge, here's what's important about the affidavit. Mr. Myers said, no attorney in the firm had ever been disciplined. I think you've had a chance to answer the question. Let me answer this one. It's advice to you, Mr. Knight, in the future in your practice. You can't always have issues with what you disapprove of. In other words, if there's something that is against you in a case, and you can concede without giving away your client's confidentiality on the case, sometimes it's very wise to do it. But we're looking at a record there where any lawyer would know that the responses given to Judge Boyle were either those of a totally incompetent man or one that you can't consider to be credible. You've got your choice between incompetence, which may be based on difficulty in understanding something, or they're not credible. If Mr. Myers had come to that sanction hearing and made some concessions, which I think are unavoidable, which you have to make very clear, maybe we wouldn't be here today. That's all I have to say. Thank you, Judge. Thank you. You deserve time for rebuttal, I believe, haven't you? Yes. Okay. Such as it is. Yes. And you get an extra two minutes, but it really took about four minutes. So you may get an extra four minutes if you need it, counsel. I want to make sure everybody has equal time and everybody gets their questions asked and answered. Yes, ma'am. I want to apologize to the court. I have an upper respiratory thing, so if I cough or if I look at you as if I didn't hear you, I apologize. I'm just a little congested this afternoon. I wanted to answer the questions that the judges brought. Judge Ellroy, you had asked if there was evidence that Judge Boyle developed herself in the case regarding Mr. Myers, and there was. The first thing was the testimony from Dr. White. The statements that were made in trial about what the $40,000 that can completely sue Esponsi was not from me. It was in exchange with Judge Boyle. The memo, what we would call the smoking gun memo, the December 6th memo that came out in the last day of trial that talked about the $40,000 from Dr. White. The last day of the sanctions trial. Yes, the last day of the sanctions trial, Your Honor. That was obviously not something in our possession. It came from Mr. Ragdoll's attorney, and then, of course, we talked about it at great lengths with Judge Boyle. But that did not come from us. The other bit of evidence that Judge Boyle talked about, specifically regarding Mr. Myers, I was trying to focus only on Mr. Myers, not on Mr. Ragdoll, was Judge Hsu's transcript. We did not bring the transcript. You didn't bring it. She got it herself. Yes, ma'am. She actually attached it to her order as an exhibit because she… But how did she know of that proceeding? You brought that to her attention. We did talk to her about the existence of the sanctions. The transcript existed. We did not offer it because after the close of the second day of the sanctions hearing where Mr. Myers asked for the continuance, Judge Boyle, at that point, asked us to all file our exhibits, which is why there were additional exhibits that came up on the third day of the hearing. I know Mr. Mike and I thought that we just brought those forward. That was not true. Judge Boyle actually gave us an order. Both sides filed them and exchanged them in advance of the third day of the hearing. The transcript was not… I don't think the hearing had actually happened yet, but there was certainly no transcript available, so we did not bring it to Judge Boyle. She found that on her own. We did tell her about the existence of the Scarlatt case and the complaints made about Mr. Ragdoll and lying to Judge Hsu that were done at that time. But did you later tell them that that was not found to be lying to Judge Hsu? It hadn't happened, Your Honor, at any of the sanctions hearings. I think that the order about the Scarlatt came out after the sanctions hearing in the 500-and-something days before the order was issued. Did anybody bring that to her attention during the relevant time period before she issued her big order that that was based upon something that really hadn't unfolded that way? And the fact that Judge Gregg went on to say that the other side was the one that had been disrespectful. Your Honor, Judge Boyle had issued a very strong order that nobody filed anything. We did not file anything. I do not believe that Mr. Myers or Mr. Ragdoll filed any additional notice of the ruling. Well, the majority opinion in the Scarlatt vacator didn't have anything to do with the merits of whether or not there was a lie. It was simply an important jurisdictional issue, but not a finding one way or the other. But they went into it. I mean, not that they went into the issue. The second opinion, yes, Your Honor, Judge Boyle addressed that in her footnote, so she was clearly aware of that. Yes, she talked about it in her order and described why she didn't think that the fact that the majority opinion overruled it because of a jurisdiction issue, she actually said what Judge Hsu said. The Fifth Circuit remanded on an unrelated jurisdiction issue. Right. So, okay, Crowe said, it's been an argument, though, that we did not find clearance missing. I'm not foreshadowing by any means. Yes, ma'am. What happens with the attorney's fees under statutory? You lose the inherent. Right, right. Just to recall where we were procedurally at the time of the sanctions hearing. At that time, Judge Boyle had already told us that there would be a hearing. We filed a 37 motion, a written one. We had had an oral one in the trial itself, and a 1927 motion. Your Honor, the only two entities that we sought fees against were Mr. Radbill individually and the law firm, Weisberg and Myers. We did not seek anything against Mr. Radbill. So you were not seeking attorney's fees against Mr. Myers. We did not. Statutory attorney's fees. So that's the answer to the question. Yes, ma'am. And that's what I was trying to get to is that it was the 1927 motion, which Judge Boyle decided not to rule on because of the inherent authority, was directed at Mr. Radbill and at the law firm. We had not, I didn't actually file any motion against Mr. Myers. So the only thing before us is the inherent authority. So if you lose on inherent authority, you would agree you lose entirely. As to Mr. Myers? As to Mr. Myers. Yes. What happened to the firm then? What happened to the firm? The order is kind of weird because it says when I talk about the firm, I mean Mr. Myers. So I don't know how to take that. What happened to the firm? I don't have a good answer for you, Judge Haynes, because I do recognize that's what she did. When I read at the end of the order that she specifically said the two attorneys were responsible for attorney's fees, she didn't say Weisberg and Myers. So the reason why Mr. Myers was even being called to the stand was because he was there as a representative of the law firm. And that's why we called him to the stand, not because we were trying to So you're not pursuing, though, any relief against the firm? We, in this hearing, the judge hasn't ruled on the attorney's fees motion, and there hasn't been a final ruling. I'm not sure that 1927 motion is even right for determination. We're not, we shouldn't I want to be clear. You think, regardless of what we rule on Mr. Myers, except to the extent that that's got, you know, presidential values, it doesn't affect the law firm because the law firm's still pending on the 1927? You think that's still pending, even though you've had these five days of sanctions and an order? You don't think the order addressed that? Well, if you remand it back, and you're telling the judge that, well, she still has to rule on the attorney's fees for Mr. Radville. So those fees have not been determined yet, in part because, Judge Elrod, you're exactly right, it's because they have asked for an extension to file a motion for reconsideration. So I don't think Judge Boyle has received the case back. If she rules on that and she looks at it, I think we could get an entire attorney fee against Mr. Radville, but I think that there's not a final determination on the 27th. I'm not sure that it's right, Judge, because we, I think we could still argue it as an appeal to this court because we haven't had any determination on the attorney's fees. So, wait, wait, wait, wait. I mean, right in what sense? It may not be right in front of us, but it seems to me you had a sanction hearing where this motion was one of the things considered. The judge determined that that wasn't the right vehicle to get to a place of disciplining these two lawyers and went off on that tangent. But if there's no ruling on the firm, then shouldn't that have been a motion to modify that order? Or did she, by saying the firm is Mr. Myers and then sanctioning Mr. Myers, has she then addressed that motion? I mean, I'm having trouble understanding procedural posture. I am, too, Your Honor, because that is a little bit of a dilemma because it wasn't clear. I would argue that we would go back to Judge Boyle and say the court's made a determination with regard to Mr. Radville, Mr. Myers, do you want to revisit the 1927 motion as the law firm? If we were going to do that, if Mr. Radville takes care of the fees issue, I don't know that we would ever even raise it again. But we can't do anything with it. So we only, in this particular appeal, this one, not the one we heard already, we only deal with inherent authority on suspension and sanctions, right? For Mr. Myers. For Mr. Myers personally only. That's the only authority, jurisdiction that we have for this particular case. Yes, ma'am. And that was invoked by Judge Boyle at the close of the first day. And we did not file any motions. Well, I'm wondering then, I mean, in a sense, if you feel like you've gotten satisfaction, assuming that Mr. Radville's matter isn't further determined by an en banc court or panel on rehearing, the Supreme Court or whatever, then do you even, I mean, is there a reason why we're here? Should we have maybe delayed this oral argument? Because it seems to me you're kind of saying, look, obviously the disciplinary sanctions aren't really your bailiwick. I know we've been back and forth. I don't want to revisit the lengthy argument that was made on that before. But as far as the attorney's fees, obviously you can only recover attorney's fees once, regardless of how many people you can recover from. So if you're satisfied with recovering that from Radville, do you even need to be here? I mean, can we just excuse you in exchange with Mr. Nye on the issue of the three-year suspension? Well, Your Honor, I have to be honest with you. He has also appealed the attorney's fees, so I guess we're here defending the attorney's fees because we haven't been satisfied yet. And there hasn't been a filing. Okay. All right. But I'm just unclear on kind of what you're saying about the attorney's fees. Judge, I guess this is – there are two separate questions for me. The only authority that we have to be here in front of this Court is that Judge Boyle invoked her inherent authority. That's a fact. That is an absolute. That's fair. And as part of that – I thank you for conceding. Yeah. Well, it's true. That's great. Okay. Chance is always good. Yes, ma'am. We use it a lot more than it is. Yeah. Go ahead. And it is absolutely true that at the end of that order, she granted joint and several liability on the attorney's fees for both Mr. Radbill and Mr. Myers. During the course of the order, she says, I am not invoking 1927. I'm not going to deal with the 1927 because I do not believe it addresses the problem that is before her. And that's procedurally where she left us. And I'm not trying to be – I am not exactly 100% sure how we fix that because it clearly – Okay. But you didn't speak 1927 against Myers. No, ma'am. Okay. So we just rule on – we look at Crow and if there is clear and convincing or there's not. I think that that is inherent authority only, Your Honor. I do believe that. Okay. I wanted to address a couple questions you raised. I think we addressed the 1927 issue, Judge Haynes. But the other issue was you said you had concerns about the lawyers in this case in terms of their ability to get along if this was just an ongoing contest and that we didn't get along about anything. And I know I recognize I'm going a little bit out of the record here, but I just wanted to assure you, Your Honor, I offered to settle with both Mr. Radbill and Mr. Myers before any of the sanctions hearings happened. And my offer to Mr. Radbill – But we can't talk about the settlements, I don't think. Well, my concern is broader than this case. My concern is apparently your practice is representing creditors, and Mr. Radbill and Mr. Myers represent debtors, and apparently y'all, because you had this other case that you had to explain in your surreply and all that. And I'll tell you, it reminded me of the worst of what it was like to be a state district judge to read all this because it's he did this and she did that and he did this, and I don't frankly care. So I'm saying to you and I'm saying to Mr. Knight's client through Mr. Knight, y'all need to get along in other cases or we're going to have a whole lot more of this, and I don't want this. This isn't – y'all shouldn't be here because this shouldn't have transpired the way it did. Yes, ma'am. And all this calling each other names and all this stuff and your organization, you know, championing how they're camping down on the people who would dare to represent debtors, all of that is not the highest and best of this profession, but we really probably should get back to the matter at hand. That's more of a lecture than it is a question. Okay. To be fair. I was trying to address it. And just so the Court knows, that was an offer made. Whether – that's a sign that we were trying to get along with them. That's all I was trying to say, Judge Elroy, not the details of anything else. Okay.  Yes, ma'am. We actually spent significant time in our brief about that, but Mr. Myers specifically was the one who lied about the – in my opinion, it was a lie that he told the Court about the $45,000 being a result of a rogue client. We put in our brief the exact quotes from what the exchange was between Judge Boyle and Mr. Myers, where he said that I was not aware that this client had ever sought that, I would have told them not to do that, and that this was the result of a rogue thing. And that is a very, very short summary of about four pages in our brief. If you would like to cite, Judge, I'm happy to get it. No, never. Okay. And that is a very specific thing about the existence of the $45,000 and it being a lie. In his argument, he said, I was not aware of it. Then we get the billing records that indicate that that memo, the one that showed up on the last day of sanctions, had been provided to Mr. Myers and that he had received it from two different sources. I understand their argument. They're saying we're misinterpreting the billing record, but the billing record shows the actual December 6th memo from Mr. White being forwarded to Mr. Myers, which described exactly the things Mr. Myers said he did not know. But you're saying it's a reasonable inference from that? Yes, ma'am. That he did know and then he did not. Well, Judge Boyle took it as a lie. Okay. That's the primary thing. That's the first thing. The second thing he did that in terms of a lie was really what happened in the Starlock case. He told Judge Boyle in two different places in the record that, first, that Mr. Radbill did not work for him anymore and also that he was not an associate with their firm. I may have them flipped. I think they actually appeared in the other order. But Judge Boyle was very specific. Okay, so he's not an associate at your firm, and Mr. Myers said, he doesn't work with me anymore, Judge Boyle. And then it turns out the very next day he's representing the firm in front of Judge Hughes, and Judge Boyle took a specific issue with that. Well, he had to finish out the sanctions problems that he caused, which he was. He didn't work for the firm anymore, but he had to finish out the sanctions. That's not taking on cases. How can that be clear and convincing? It's so ambiguous. Well, to me it's clear and convincing because he could have said, Judge Boyle, other than appearing tomorrow in a sanction hearing, I have nothing else to do with him. That is not what he said. He led Judge Boyle to believe that they had no further action. Or other than finishing out existing work or something. He didn't qualify it. He didn't qualify it. And so in that sense, I understand what you're saying, Judge Elrod, but that's not what he said. He didn't give any qualification. He said, we're done. We have nothing to do with him. How can he be sanctioned for either of these things without having gotten notice? Because both of these statements are during times where he's not on the stand or anything. He's actually asking questions during the time about the $45,000. He's talking to the court kind of in between, and Mr. Radbill was responding to something. So how can he be sanctioned without a proper written notice? I'm not talking about monetary sanctions. I'm talking about suspended, which we treat under the contempt standards. And if you look at test masters and things, they require a written notice. I understand, Your Honor. I think Judge Boyle gave him a very lengthy verbal notice about what she was doing based on the fact that he lied to her about the $45,000 in her opinion. And it is a very detailed notice. We set it out in our brief. It goes about three pages where she tells him, I have concerns about your behavior. He did, in fact, that first day, his manner, as Judge Boyle described it, got her ire up. He really was offensive to her. But concerns about your behavior, and I might sanction you, is different than you can be suspended from the practice of law. We require a written notice. Your Honor, I don't believe in the Crow case they gave that kind of written notice that you're suggesting. Test masters, did you read that? We're looking at the court told us the Crow case is the one that we're sort of looking at in this. And I went back to that, and they did not do that kind of written notice. And there was a question about whether there was a suspension in that case. And portions of that was upheld by the Fifth Circuit, and portions were overturned. But they didn't give the kind of written notice that you're requiring, that you're now saying Judge Boyle should get. Did they need the written notice for the attorney's fees or just for the suspension? Under the Crow case, I think that under the Crow case, I don't agree that they need it for either one, but I think that they would have to have written notice of an actual disbarment. I didn't see a case that talked about a suspension. I think Judge Elrod is linking the two as the same, and effectively they may be. But I didn't see a case that directly addressed when it's a suspension as opposed to a disbarment. And what about the attorney's fees? I mean, if we were to, say, disagree with the suspension for other reasons, would there be a similar notice issue on the attorney's fees? Or was he adequately given notice? It's certainly an opportunity to be heard. I mean, he had three or four days of it. Yeah. But adequate notice. I think under the Crow case, he was given adequate notice. Judge Boyle very specifically told him that she was concerned about his behavior and his role in the case. And talking about the line, because it's very clear that she's talking about this. So I do think she gave him verbal notice. She did not give written notice. Under Crow, I don't think it has to be written. That's my reading of it, Judge Elrod. Okay. Under textmasters? I don't specifically remember the language on that that would address the money issue, Your Honor, to be honest. If you would like for me to brief it on that. No, it's about the contempt. Okay. So I'm just linking it together, as you said. Okay. That's fine. And just one more thing on the notice. Did he complain to Judge Boyle that he had failed to receive specific written notice of the charges against him and was therefore unprepared? No, ma'am. Not at one point. He asked for a continuance when we came the second day to get additional evidence. And, in fact, Judge Boyle gave him continuance and allowed him to file it, which is why we brought the additional evidence on the third hearing. And she told him very specifically, go get whatever evidence you want to bring forward because we're going to look at this now. So she gave him an opportunity to do that. He never said, I didn't have notice. He said, I need additional time, which she gave him. Okay. The case that you're saying, the pro case, does not separate the attorney's suspension and the monitor's. It treats it all kind of as one package. But I have a question. Assuming, arguing that we were able to separate it out and some of our questions may have gone into separating it out, we don't know what the amount is. Right. We would just say that we affirm as to attorney's fees that are proper but to be determined later as to their appropriate. How do you affirm that? She gave a formula. She gave a formula. But she did not give a specific dollar amount. So I suppose the court could say Judge Boyle's formula was appropriate. I think her formula was that she awarded like a portion of the trial and then the entirety of the sanction hearing. So she did give a formula, but she hasn't given a final number. Okay. So you think we could affirm the formula if we wanted to? Or would we just say they're appropriate and in their next appeal, once the number was given, they could appeal that it's too much or not appropriate? I'm afraid they could appeal and say it was too much, Judge. It's kind of not really – the only reason it's before us is intertwined, whether we have jurisdiction because it hasn't actually been awarded yet. Yes, ma'am. I agree. So they could argue that it's too much or that the formula is bad in the next appeal. They did not address it in this appeal, so I think they could. Yes, ma'am. Okay. So I don't know if we should get into talking about Topalian and how could he possibly be liable for all the costs and expenses of the sanctions hearing whenever he wasn't even in part of the sanctions hearing. And there's also the issue about self-imposed costs where y'all brought in extraneous things that were not really essential. I mean, but you think that's in the next appeal? Judge, I don't see – she hasn't awarded on something. Well, I mean, I'm trying to – I'm going to have to ask you questions about Topalian today. Yes, ma'am. And rule on it or is that not for this case? In all – Honesty. Yeah. Judge, I don't know how you can rule on it on the attorney's fees issue when she hasn't finalized it yet. So we could rule that there is no clear and convincing evidence of anything that would support anything. We could rule that way. You could. We could also affirm whatever that may mean. And then it goes back for fees to be determined. Or we could do something in the middle. Okay. As we sort of did with Radville, we affirmed part of the sanction of the suspension and then affirmed essentially liability for attorney's fees. But, of course, it went back on the amount. And so then the question on the amount would be, in my view, with Mr. Myers, does he – if you find that there is sufficient evidence to support a sanction of attorney's fees against him, is he tagged with the same amount as Radville necessarily? I know the judge said Joylene Severly, but when you get into it, that first day of sanction would have been held whether he showed up or not. Okay. And I'm never going to go after Radville. Some of the rest of the days would have been held without him because of all the back and forth with Radville. And so, therefore, should he necessarily be tagged for that? I think, Your Honor, that the fairest thing – I mean, at the moment that he filed that Arizona bar letter with Judge Boyle, things changed. So from that point on, then that's probably fair for Mr. Myers to be considered. The firm, I think, should be on the hook for the trial itself. But we're not on – I understand. But I don't think it's fair to assume Mr. Myers individually for the amount of the trial itself, which is what the judge did. Okay. So you're not seeking the trial about that? Well, I guess Mr. Myers – From him, from him, from Mr. Myers. That's what Judge Boyle ordered. And if you're asking me what I think is fair, I don't think he should be tagged for the trial itself. I think it only should be the sanctions hearing, to be fair. Sanctions hearing from Arizona letter forward. Yes, ma'am. Okay. Which hearing was that? That was at the end of the first hearing when he filed that letter. So second, third, fourth, and fifth days, you think he should be jointly and severally liable for a sanction hearing, and that's it as far as fees? Right. The only hesitancy I have, Judge Haynes, is that if the court – I could see how Judge Boyle could consider his filing some of the pleadings may have played a role. But I think her actions were really directed at his behavior in the courtroom. So that's why I'm doing it from the Arizona letter. Have you requested or received any funding from the Association of Credit Collection Professionals or any other entity in connection with this particular appeal? Let me be clear, Judge Elrod. I didn't request anything myself. If you're asking did RAB did, they requested generally some funding that was assisted to help to pay for Justice Mosley, and we did receive enough to pay for Judge Mosley and some funding, but not a great amount. I'm happy to tell you. So in this appeal, unlike the other one where you didn't get funding, you actually got some funding? Oh, I'm sorry. Only on the appeal. We did get – I thought our answer – we haven't received anything yet, Judge. I have not received any funding yet. But you have been awarded funding in connection with both appeals? A different amount, but yes, ma'am, to cover the additional cost. I'm happy to tell you what it is if you would like me to, Judge Elrod. I think the bottom line is you're getting something for the appeals, but you didn't at the time. I have not. I thought you were saying you weren't getting it is what I thought you told us in the other appeal. No, I think I said that we had been promised – I believe my letter said we had been promised some funding, but we had not yet received it. We have since that letter received funding to cover Justice Mosley and – Jim Mosley – and some of our costs. I have been told we will be getting some funding for this. We have not even submitted anything to them as to what Judge Mosley's time was, but we will be – and I have been told we will receive it. I have not yet. For the appeals? For the appeals only. Doesn't that really complicate things about your role as the roving attorney who's getting paid by the industry? I mean, that – I thought we said it was no harm, no foul because you hadn't gotten any money in the last case. I didn't read that, Your Honor. No, but at oral argument when we discussed about it. We didn't – Your Honor, we didn't discuss about it at oral argument. Or afterwards. We didn't know about it. But afterwards. It didn't happen until after oral argument. Okay, so. We didn't discuss it at all, Your Honor, in due respect. Well, we thought we were too long. Okay, well, then I want to know then. Okay. Justice Mosley is an appellate specialist in Dallas. He is not covered by my client's insurance policy. So my client asked – was aware that there's funding for appellate staff through the association. Is general funding available? They applied for it. They received some funding that covers Justice Mosley. He has been paid on the Myers appeal – I'm sorry, on the Radborough appeal. We have not yet submitted any funding for him on the Myers appeal. So – and to the extent that the insurance company is going to reimburse part of the money that offer costs, like, for example, some of the costs that are related only to appeal, I have not personally been paid anything, Justice Mosley. Okay, but when we said two wrongs don't make a right in the opinion, should that make you hesitate to take the money then? It wasn't actually going to me. It was going to Justice Mosley, and I felt he deserved to be paid for his work on the brief. If that was wrong, Your Honor, then I apologize. It just seems – this is a very unusual case. You understand that. I do. But I'm trying to make sure that there's no private entities influencing the prosecution of these lawyers. Okay.  We didn't even apply for it until it came to the issue that we were going to have to – we thought we needed to hire a second appellate lawyer who would not be covered under the policy. And in my client applied for it, we did receive funding that has gone to Justice Mosley's firm. Our firm received some funding that the insurance company has received back on some of the court costs. We have not received anything on this one. And I appreciate that you're very candid with the court, and I appreciate that. Okay. You've been candid throughout this argument, and we really appreciate that. Thank you. Thank you. And I apologize for my cold judge, but if it sounds like I'm trying to – the truth of the matter is we have not received money in this case. Well, I think you understand why we were concerned about the press release. I don't think it justifies anything Radville or Myers have done. Right. So that's why the two wrongs don't make a right statement makes sense to me. But it is concerning to think that this whole thing is really a matter of trying to squelch somebody from representing debtors, because that isn't proper. And I understand that, Judge Haynes, if, in fact, that we had been paid from the very beginning of the sanctions hearing and that that was being initiated by the outside source, then I think your concern would be. But this is the same thing as if you're a member of – like if you're a member of NACA, which is the National Association for Consumer Attorneys, they have funds available that attorneys, if they think an issue is important, that they can apply for to assist them in filing for appeals. I'm on a judicial – or I was the chair of this judicial committee, and what they did was they looked at amicus briefs in cases that are on appeals. They're not generally going out there and filing bar complaints or funding those kinds of things. I don't know of any part of the organization that does that. I can't say I know every part of the organization. But the committee that I was on was solely looking for cases that we would be supporting on appeal and amicus briefs, because appeal issues, for example, in fee-shifting cases, have to do with whether or not they are going to award all the fees in a certain case. That is of interest to the industry as a whole. So it's no different than any other trade organization. You understand why we don't like that. Sure. And I do think you need to relay to the organization that while I think it's totally legitimate to be concerned about whether fees are recoverable or not, and as an industry try to support lawyers that are advocating in a particular way, that's fine. The concern I have is the way this was postured is like, man, we got these people, and it's sort of like, if you dare to take us on, this is what's going to happen to you. And that's worrisome to me. If I had written the article, Judge, it wouldn't have read that way. You know, I didn't write it, I wasn't quoted, and I wasn't even named in the article. I didn't know it was coming out. It would have been not my preference. Counselor, this is my last question. Yes, ma'am. One of the things that Judge Boyle had to consider was whether the sanctions were, you know, considered the least sanctions that would remedy the situation. You know, that's part of her undertaking. We have to figure out whether she used the least sanctions. We talked about this last time. Yes, ma'am.  Yes, ma'am. And now we're in a situation where you know that a panel of this Court has said that one year was adequate for the sanction for the gentleman who's the key person. So why would three years be appropriate for the person who's tangential and then comes in in the end? Well, I don't necessarily agree he's tangential because he made his own independent decision to make this statement to Judge Boyle. But the short answer is if it's one year for Mr. Radbill, the amount for Mr. Myers, as the Court knows, your order came out after our briefing. But yeah, then I don't think the Court can give more than one year for Mr. Myers. I think that's only fair. Should it give less? Well, in my opinion, Judge, he lied to Judge Boyle about the $45,000 and he should have known better. You talked about the duty to supervise. He did not. He paid no attention to what this guy was doing. His suggestions to Judge Boyle, I can still remember the day when she found out they never talked to any witnesses before they put him on the stand. I believe she said that was malpractice. He certainly wasn't supervising. I do think you have a duty as a managing partner of a firm to actually play a role in what's going on that is happening in a case where you're involved. What bothers me more about Mr. Myers than in another situation would be, for example, Mr. Radbill's brother was supervising him supposedly in handling the trial. The problem that I have with what Mr. Myers' position was is that his argument in his brief is that he came to the sanctioned hearing to discover what was wrong. And if you are the managing partner in a law firm and your associate has gotten themselves in this kind of hot water, you don't wait to go in front of Judge Boyle to figure out what it is. You go and find out and you comb into Judge Boyle and you say what I think every other attorney would say, I think what Justice Riesley was referring to. My associate screwed up, Judge. He will not do this again. I will make sure this does not happen. I apologize on behalf. The statement Mr. Myers made as his closing argument at the end of the sanctions should have been all that he ever had to say at the very first day. He should have come in and apologized to Judge Boyle for Mr. Radbill lying and he should have said I will fix it. If he had done that, Judge Elrod, we wouldn't be here. But instead of doing that, what he showed was that they don't supervise the actions of their attorneys. And not only that, they are going out making representations about their abilities and tweeting that they won on the White case while we're in a hearing after they had lost. How do you do that? You have a duty to the general public that Mr. Myers did not take seriously. And that's my concern. Thank you. Thank you. Thank you. With respect to the 1927 issue and the other orders, in the court's opinion, the court stated, excuse me, in the court's opinion, the sanctions order. To the extent Radbill lies on Rule 37 of 1927, the court declines to award relief under those provisions. So that's the most indicia of what the actual ruling is on 1927. Well, something counsel said is they're not sticking to the proceeding. And I know they're not sticking to it. So what I'd like to go back to here is throughout the presentation is what is the clear and convincing evidence that Mr. Myers engaged in any bad faith conduct? And there were just a couple of things of this five-day hearing that were mentioned. And I would like to address those because I again submit to the court there's no evidence that Mr. Myers engaged in this sort of bad faith lies to the court that have been described. He didn't do that. The billing records do not reflect that Mr. Myers reviewed any of this. And if you look at his own billing records, the memorandum, if you look at his own billing records, there's nothing like that. The initial complaint was that other lawyers actually supervised him. He made representations to the court about this $45,000. She asked him specifically, are you representing as an officer of the Corps, blah, blah. And he kept saying yes, and he was making these representations. And it seems to me that at best he had no idea what he was talking about. So instead of saying, I'm sorry, I don't know. I need to go look and understand this better. I'm sorry, Your Honor, I should know this, but I don't. He just starts making representations and bumbling through this, which is much like what Mr. Radbill did. Kept saying one story, that doesn't work, try another. So it kind of seems like the acorn has fallen far from the tree here. Your Honor, and here's why I disagree with this. During the first sanctions hearing when Mr. Radbill took the stand and Mr. Myers asked him questions about the $45,000, the question started with Mr. Myers asking Mr. Radbill, with respect to the memorandum that you received, did you agree with the figures? And he said, I didn't agree with these figures. Mr. Myers can only know what Mr. Radbill is testifying to. That was the same position that the second counsel that appeared to represent Mr. Radbill took. They were not sanctioned for advancing that because they could only know what Mr. Radbill said. Same thing applies to Mr. Myers. Now here's what's critical here. And I would urge again the court to go back and take a very careful look at what this dialogue is with the court at the sanctions hearing. Because what has been represented in opposing counsel's brief is that this is the lobby. When Mr. Myers said, and there was never anything presented by Dr. White saying here's how I couldn't teach a class for $5,000. He said that. According to opposing counsel, the smoking gun that makes that a lie, where Judge Boyle said, ha ha, you're lying, is the fact that the memorandum exists. That memo that talks about the $5,000 for teaching. So when Myers says there was never anything presented to us by Dr. White saying here's how I couldn't teach the class for $5,000, they argue that's exhibit A of a lie. Take a look at this record. I urge you to do that because what Mr. Myers actually said in the very next sentence to the court is that, and when he did say this in his memo, we didn't agree with it. So what is he talking about there? The very start of this exchange with the court is Myers asking Radbill on the stand, the content of Dr. White's memorandum, did you agree with this as a matter of law and logic? Mr. Radbill said no. The judge turns to Myers, what does all this mean? Well, what it means, Judge, is we didn't agree with the figures. And there was never anything presented how he didn't get the $5,000, but when he presented it in the memorandum, we didn't agree with it. The argument is that Mr. Myers lied about the existence of this memorandum and that it surfaced on day five of the sanctions hearing. This is day one of the hearing. Mr. Myers is asking Radbill about the memo that contained the $5,000. And Radbill says, I didn't agree with those figures. I didn't agree with it. Which is only one of several stories Radbill told, and then Myers basically starts sponsoring different stories on the same $45,000. I mean, this is the problem. We have a moving target on what really happened with this $45,000. Well, I don't agree, Judge, and here's why. Mr. Myers never offered any explanation as to what the explanation to the court was. He doesn't understand why Mr. Radbill explained it to the district court the way he did. Mr. Myers didn't sponsor any explanation about why Mr. Radbill presented that exchange with Judge Boyle about whether it was disclosed or it wasn't disclosed. He didn't say that. The only time an explanation is offered at the sanctions hearing about that exchange that occurred at trial is when Mr. Radbill's second counsel stepped in and questioned Radbill when he took the stand a second time and said, let's talk about why did you answer Judge Boyle's questions this way. And the explanation essentially was, I was confused. But Judge and Mr. Myers have a little different obligation than just any old person hired to represent Radbill because he's there on behalf of the firm, which is also the subject of sanctions, and he's there as a representative of the firm who is responsible for the conduct of this guy, Mr. Radbill, as opposed to you, for example, are not responsible for the conduct of Mr. Radbill or Mr. Myers. But Mr. Myers is responsible, at least as a corporate rep of the firm, for Mr. Radbill, and he doesn't bother to find out what really happened with this. He just goes in there and says, I'm here to learn. But the reason I don't agree with that, Judge, is that this exchange that started the whole, you know, what they want to emphasize as a lie, it starts with Mr. Myers trying to explain to the court that the entire reason Mr. Radbill didn't ask White at trial didn't just suffer the $40,000 in damages and that his question was more innocuous about what is the status of your loans. He asked Radbill, so about the $40,000 that came out, in essence, what's the reason you didn't go fishing for that figure? Mr. Radbill testified truthfully. We got a memo from Dr. White. We saw it. I didn't agree with it. That's why I didn't ask about it. Granted, when that exchange came up at trial, he got tripped up when he was answering those questions. No doubt about it when you look at that transcript. But Mr. Myers wasn't there. And when he tried to explain that to the court, the court turned to him and said, so your position is that you weren't aware that he was going to testify about that. Mr. Radbill had just testified at the hearing. Never was I aware. I didn't agree with those figures. I didn't think he was going to say that. What else could Mr. Myers tell the court? So the judge turned to Mr. Myers and said, what does this mean? What it means is we, as a firm, didn't know he was going to say this. That's what he said. That's truthful. That's borne out in this record. The arguments about Mr. Myers somehow lied about he knew of this memorandum. The billing records don't reflect it. He's the managing partner of a firm. He's not handling the case. He's got, according to them, too many people supervising Mr. Radbill. And we know that Aaron Radbill was supervising. Mr. Radbill testified that he spoke to him about how to handle the case. That's the answer to your question. I mean, I think you're just kind of back over the same stuff. OK. Your time has expired, counsel. OK. Thank you. Thank you. Thank you.